IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

UNITED STATES OF AMERICA                                                        PLAINTIFF

v.                              Case No. 4:25:CR-00210-KGB-1

REGINA ELLIOTT-STOKES                                                         DEFENDANT

## MOTION TO SUPPRESS CUSTODIAL STATEMENTS AND PHYSICAL EVIDENCE BASED ON ILLEGAL ARREST AND MIRANDA VIOLATION

COMES NOW the Defendant Regina Elliott-Stokes by and through her attorney Michael Kiel Kaiser of Lassiter & Cassinelli, and for her motion to suppress, states:

This motion stems from the Fourth and Fixth Amendment violation committed against Elliot-Stokes by law enforcement on December 4, 2024. First, Elliot-Stokes clearly and unambiguously invoked her right to counsel, after which law enforcement failed to cease questioning. All of her statements from December 4, 2024 must be suppressed accordingly. Secondly, law enforcement illegally arrested Elliott-Stokes without probable cause or an arrest warrant. All physical evidence seized as a result of this illegal arrest must be suppressed accordingly.

I. **Elliott-Stokes Was Detained Illegally.**

On December 4, 2024, around 10:45am, Elliott-Stokes was walking down Race Street in Searcy when a large white truck quickly pulled up alongside her, nearly hitting her, and an officer jumped out and yelled her name to identify her. She identified herself and was immediately handcuffed, placed into the back of a Searcy PD police cruiser that arrived shortly after, and commanded to provide her phone. She was taken to the Searcy Police Department. Police then Mirandized and interrogated her for several hours. Police then took Elliott-Stokes back to the scene to identify evidence—in handcuffs—and then took her back to the police

department to interrogate her further. Police then took Elliott-Stokes to the White County Detention Center, where they interrogated her again. Elliott-Stokes was in custody for about 7-8 hours being interrogated before being placed into custody at the Detention Center. Elliott-Stokes was in handcuffs the entire time.

Police specifically arrested Elliott-Stokes for the purpose of interrogating her. Elliott-Stokes is alleged to have made incriminating statements throughout these custodial interrogations.

This was an illegal arrest as law enforcement had no arrest warrant for Elliott-Stokes or probable cause that she had committed any crime. As an initial matter, all physical evidence seized as a result of this illegal arrest must be suppressed as fruit of this unlawful arrest. *Wong Sun v. United States*, 371 U.S. 471 (1963).

Elliott-Stokes's custodial statements must be suppressed as they were irreparably tainted by the illegal arrest as well.

Police-citizen encounters have been classified into three categories. *United States v. Hernandez,* 854 F.2d 295 (8th Cir. 1998). The first and least intrusive category is when an officer merely approaches an individual on a street and asks if he is willing to answer some questions. *Id*. Because the encounter is in a public place and is consensual, it does not constitute a "seizure" within the meaning of the Fourth Amendment. *Id*. The second police encounter is when the officer may justifiably restrain an individual for a short period of time if they have an "articulable suspicion" that the person has committed or is about to commit a crime. *Id*. The initially consensual encounter is transformed into a seizure when, considering all the circumstances, a reasonable person would believe that he is not free to leave. *Id*. The final category is the full-scale arrest, which must be based on probable cause. *Id*.

The Fourth Amendment prohibits arrest without probable cause. *See Gerstein v. Pugh,* 420 U.S. 103 (1975). Probable cause to arrest without a warrant exists when "the facts and circumstances within the collective knowledge of the officers and of which they have reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution to believe that an offense had been committed by the person arrested." *Carroll v. United States*, 267 U.S. 132, 162 (1925).

It is well-established federal law that "merely touching" a suspect with lawful authority constitutes an arrest for the purposes of the Fourth Amendment. *Torres v. Madrid,* 592 U.S. 306, 311 (2021). There is no question that driving up to a pedestrian, yelling at them to identify themselves, and then immediately handcuffing and placing them into the back of a police vehicle constitutes a full-blown arrest requiring probable cause to be proper. This was an arrest, pure and simple. Whether the State tries to minimize it as "detention" or use some other verbiage, an officer jumping out on someone, handcuffing them, and bringing them to a police station against their will is an arrest. Officers needed probable cause accordingly. They had none.

At the moment law enforcement arrested Elliott-Stokes, they had no probable cause that she committed any crime. The arrest warrant affidavit written by Agent Laurel Sexton showcases the lack of probable cause present during law enforcement's illegal arrest of Elliott-Stokes. The affidavit states that law enforcement "spoke with the 911 caller/complainant, Angelia Robertson" who was "on scene at the incident the night of the overdose." *See* Exhibit A – "Arrest Warrant Affidavit," at 1. Robertson informed law enforcement that she saw "a male who appeared to be in medical distress" and told Elliott-Stokes she intended to call emergency services. *Id*. at 1-2. Robertson said she saw Elliott-Stokes "ingest/smoke a substance from a piece of aluminum foil" before Elliott-Stokes left the residence. *Id*. at 2.

Additionally, Agent Cody Hulsey's investigative summary report further indicates that law enforcement lacked knowledge of Elliott-Stokes' alleged involvement in Mr. Anderson's overdose before her illegal arrest. The report states that law enforcement "spoke with Robertson" on December 4, 2024. *See* Exhibit B – "Investigate Summary Report," ¶¶ 7-8. Robertson "stated she was on scene the night of the overdose." *Id*. at ¶ 8. Robertson informed officers that she had delivered a pizza to Elliott-Stokes and saw Mr. Anderson lying in the doorway of the camper. *Id*. at ¶¶ 8-9. Robertson also said that "she said she was going to call emergency services," and that after she called emergency services, Elliott-Stokes left the residence. *Id*. at ¶¶ 11.

Law enforcement lacked probable cause that Elliott-Stokes had committed a crime when they arrested Elliott-Stokes, and her subsequent statements must be suppressed accordingly. At most, she was a witness at that point.

Furthermore, Officer Kole Malone's incident report makes no reference to Elliott-Stokes. *See generally* Exhibit C – "Officer Kole Malone's Incident Report." Officer Malone states that he was dispatched to the residence, where he observed "multiple people: a Mr. Brandon Stokes, Mr. Jason Hill, and Mrs. Angelia Robertson." *Id*. at 3. Officer Malone then "asked the people on scene what happened," and was informed that Mr. Anderson was experiencing a" suspected fentanyl overdose." *Id.* Officer Malone's report does not reference Elliott-Stokes, nor does it state that witnesses told Officer Malone that Elliott-Stokes provided fentanyl to the victim or had fentanyl on her person at the time of leaving her residence. *Id.* Thus, Officer Malone's incident report indicates that law enforcement's knowledge was limited to the identity of the victim and the substances he consumed, not the origin of those substances or if Elliott-Stokes had illegal substances on her person. Elliott-Stokes' custodial statements must be suppressed accordingly.

4

Given the knowledge that law enforcement possessed at the time of the seizure, which amounted to little more than bare suspicion, there was no probable cause for Elliott-Stokes's arrest. At most, Elliott-Stokes was a potential person to be questioned, a possible witness. She was not a suspect. In *Dunaway v. New York*, the Court noted:

> The situation in this case is virtually a replica of the situation in *Brown*. Petitioner was also admittedly seized without probable cause in the hope that something might turn up, and confessed without any intervening event of significance… [breaking] the connection between petitioner's illegal detention and his confession. To admit petitioner's confession in such a case would allow 'law enforcement officers to violate the Fourth Amendment with impunity, safe in the knowledge that they could wash their hands in the 'procedural safeguards' of the Fifth.

442 U.S. 200 (1979) (quoting *Brown v. Illinois,* 422 U.S. 590 (1975)). The same is true if this Court admits the evidence obtained following law enforcement's seizure of Elliot-Stokes without probable cause.

"An arrest without a warrant bypasses the safeguards provided by an objective predetermination of probable cause, and substitutes instead the far less reliable procedure on an after-the-event justification for the arrest or search, too likely to be subtly influenced by the familiar shortcomings of hindsight judgment." *Beck v. Ohio*, 379 U.S. 89, 96 (1964). The *Beck* Court dealt with similar facts, noting that law enforcement's knowledge at the time of arrest amounted to little more than knowledge of the suspect's appearance and that he had a previous record of arrests or convictions in connection with the suspected activity. *Id.* at 97. Similar to *Beck*, "the record in this case does not contain a single objective fact to support a belief by the officers that [Elliot-Stokes] was engaged in criminal activity at the time they arrested [her]." *Id.* at 95. Elliott-Stokes's warrantless arrest was unquestionably based on less than probable cause, and was illegal accordingly.

    A. **Law Enforcement's Detention of Elliott-Stokes for Questioning Violated *Henry v. United States***

Pursuant to the Fourth Amendment, law enforcement is required to have probable cause to execute an arrest. *Henry v. U.S.* is fundamental precedent that defines the probable cause necessary for law enforcement to effectuate a warrantless arrest, stating: "Probable cause exists if the facts and circumstances known to the officer warrant a prudent man in believing that the offense has been committed." 361 U.S. 98 (1959)(quoting *Stacey v. Emery*, 97 U.S. 642 (1878)).

If there is an arrest, the probable cause defined above must be present. There was clearly an arrest in this case. Although the law does not require a verbal warning of freedom to leave as a brightline rule for determining whether a seizure of the person has occurred under the Fourth Amendment and whether a statement to police officers must be suppressed; such a verbal warning is only one factor to be considered amongst the totality of the circumstances. *Florida v. Bostick,* 501 U.S. 429 (1991). The primary consideration for determining whether a seizure occurred for purposes of the Fourth Amendment is whether a reasonable person would believe they were not free to leave. *United States v. Mendenhall*, 446 U.S. 544 (1980).

The totality of the circumstances make it undeniably clear that Elliott-Stokes was seized for the purposes of the Fourth Amendment. Elliott-Stokes was detained at gunpoint, was handcuffed, was taken to jail in a police car, was held in a locked cell, and in fact was not free to leave. Elliott-Stokes was forcibly taken off the street. Police had no warrant. Police had no probable cause that she caused the death at issue. At most, police had bare suspicion of Elliott-Stokes's possible involvement. Police then detained her before conducting a custodial interview. There can be no doubt that Elliott-Stokes was arrested illegally.

II. **<u>Elliott-Stokes's Statements Must Be Suppressed Because They Were Causally Connected to Her Illegal Detention. Her Statements Were the Very Purpose of Her Illegal Detention.</u>**

Given that Elliott-Stokes was illegally detained, this Court must now determine whether her incriminating statements meet the Fifth Amendment voluntariness standard and whether they were sufficiently free acts such as to purge them of the primary taint of illegal arrest. *Brown*, 422 U.S. at 602.

"Whenever the State bears the burden of proof in a motion to suppress a statement that a defendant claims was in violation of our *Miranda* doctrine, the State need prove waiver only by a preponderance of the evidence." *Colorado v. Connelly*, 479 U.S. 157 (1986)(quoting *Nix v. Williams,* 467 U.S. 431 (1984)). Here, as in *Taylor v. Alabama,* Elliot-Stokes "was arrested without probable cause in the hope that something would turn up, and he confessed shortly thereafter without any meaningful intervening event. . . . [Elliot-Stokes's statement] was the fruit of her illegal arrest. Under our decisions in *Brown v. Illinois* and *Dunaway v. New York,* the confession clearly should not [be] admitted at her trial." 457 U.S. 687, 694 (1982).

Additionally, "the illegality here, moreover, had a quality of purposefulness. The impropriety of the arrest was obvious. . . . The arrest, both in design and in execution, was investigatory." *Brown,* 422 U.S. 590, 605 (1975). Elliott-Stokes's statements must be suppressed accordingly.

The *Brown* Court recognized four basic considerations for determining the admissibility of custodial confessions made while illegally detained:

  1.  The giving of *Miranda* warnings;

  2.  The temporal proximity of the arrest and confession;

  3.  The presence of intervening circumstances; and

      4.   Particularly, the purpose and flagrancy of the official misconduct.

*Id.* at 603-604.

### A. *Miranda* Warnings

Elliott-Stokes signed a *Miranda* waiver form. Accordingly, her statements were "voluntary" under the Fifth Amendment, and she does not contest that in this brief.

However, "a finding of 'voluntariness' for purposes of the Fifth Amendment is merely a threshold requirement for Fourth Amendment analysis," *Taylor v. Alabama*, 457 U.S. 687, 690 (1982) (citing *Dunaway v. New York*, 442 U.S. 200 (1979)). "If *Miranda* warnings were viewed as a talisman that cured all Fourth Amendment violations, then the constitutional guarantee against unlawful searches and seizures would be reduced to a mere 'form of words.'" *Id.* (citing *Brown v. Illinois*, 422 U.S. 590, 603 (1975)). Further, Elliot-Stokes actually invoked her rights, and law enforcement kept interrogating her in violation of *Miranda*. *See* Section III, infra.

The Court must now proceed to considering the other three factors, giving "particular" attention to the fourth factor regarding purpose and flagrancy of the illegal detention. *Brown,* at 604.

### B. Temporal Proximity of the Illegal Arrest and Statements

The United States Supreme Court has repeatedly held that longer periods of time between illegal arrest and statement do not break the causal connection between them. *See Taylor v. Alabama*, 457 U.S. 687 (1982) (six hours).

Accordingly, the short period between the illegal detention and the custodial statements does not break the causal chain.

### C. Intervening Circumstances

It is the State's burden to prove that the causal connection between Elliott-Stokes's illegal

arrest and her statements was broken. However, there were no such intervening circumstances. The Supreme Court of the United States has identified several items that can qualify as intervening circumstances, none of which were present in this case:

- Confrontation by law enforcement with new evidence of probable cause, *Utah v. Strieff*, 579 U.S. 232 (2016).;

- Visitation with family or friends prior to making statement, *Oregon v. Elstad*, 470 U.S. 298 (1985).;

- Arraignment and/or probable cause hearing, *Brown,* 422 U.S. at 604 n.11; and

- Release from custody. *Wong Sun*, 371 U.S. 471 (1963).

Not one of those things was present in this case. Law enforcement learned of no new information tying Elliott-Stokes to the charged act. Elliott-Stokes was not permitted to use the phone or visit with family or friends. Elliott-Stokes did not have a lawyer. Elliott-Stokes did not go before a judge.

There were no intervening circumstances sufficient to break the causal chain. Accordingly, this factor weighs heavily in favor of Elliott-Stokes.

### D.  Purpose and Flagrancy of the Illegal Detention

As signified by the placement of the word "particularly," this factor is entitled to special weight, and it weighs heavily in favor of the Defendant in this case. Law enforcement's purpose in illegally detaining Elliott-Stokes was to question her until they got information on Elliott-Stokes or until some other fact implicating her was discovered.

Law enforcement's actions show their true purpose was to secure evidence against Elliott-Stokes specifically. Accordingly, this factor weighs heavily in Elliott-Stokes's favor.

III.    **Even if the Court Finds her Statements to be Voluntary and Unconnected to the Illegal Arrest, Elliott-Stokes's Statements Must Be Suppressed Due to Her Unambiguous Invocation of the Right to Counsel**

During the interrogation of Elliot-Stokes on December 4, 2024, Agent Sexton asked her to identify where "Ray's dope" came from, and she responded "I need an attorney. I at least need to protect myself…" Agent Sexton responded "I mean, okay. . . . If that's the way, if that's the way you wanna do it, then we're gonna have to shut it down. We can't talk to you anymore." Elliott-Stokes then asked if law enforcement will help her with her probation situation if she gave them information, and Agent Sexton continues questioning her. *See ReginaStokesInterview_001* Video at 00:8:00 to 00:8:30.

Despite this clear invocation of her Sixth and Fourteenth Amendment right to counsel, Agents Sexton and Hulsey immediately acknowledged that she had invoked counsel but continued questioning Elliot-Stokes without an attorney anyway. Once a suspect invokes her right to counsel, "all questioning must cease until an attorney is present." *Edwards v. Arizona*, 451 U.S. 477, 482 (1981)(quoting *Miranda v. Arizona*, 384 U.S. 436, 479 (1966)). *Elliot*-Stokes was denied her Sixth and Fourteenth Amendment rights to counsel during such interrogation, and the fruits of any such interrogation are involuntary and inadmissible for any purpose. *See Edwards v. Arizona*, 451 U.S. 477 (1981).

**A. Elliot-Stokes Unequivocally Asserted Her Right to An Attorney, and The Police, Not Elliot-Stokes, Reinitiated the Interrogation.**

In the context of the right to an attorney during police questioning, the suspect being questioned must make an "unambiguous or unequivocal" request for an attorney. *Davis v. United States,* 512 U.S. 452, 462 (1994). However, "a suspect need not speak with the discrimination of an Oxford don[.]" *Id*. at 459. Thus, where a suspect makes a simple yet clear request for an attorney, questioning must cease immediately, and any custodial statements made at that point cannot be admissible evidence against him. *Michigan v. Harvey*, 494 U.S. 344 (1990). Elliot-Stokes's statement that she needs an attorney to protect herself should have apprised any

10

reasonable police officers that Elliot-Stokes was requesting an attorney.

It is possible that an accused could waive his right to an attorney after making an unequivocal request to have one present while being questioned if the accused reinitiates communication with the police. *Edwards*, 451 U.S. 477, 484 (1981). However, where it is the police, not the accused, who reinitiate the conversation, then the accused's right to an attorney has not been waived. *Id*. In *Minnick v. Mississippi,* the Court reversed petitioner's conviction holding that he had "made a specific request for counsel" and that police unconstitutionally reinitiated an interrogation without an attorney present. 498 U.S. 146, 156 (1990). Specifically, the *Minnick* Court stated:

> *Edwards* does not foreclose finding a waiver of Fifth Amendment protection after counsel has been requested, provided the accused has initiated the conversation or discussions with the authorities; but that is not the case before us. There can be no doubt that the interrogation in question was initiated by the police; it was a formal interview which petitioner was compelled to attend. Since petitioner made a specific request for counsel before the interview, the police-initiated interrogation was impermissible. Petitioner's statement to Denham was not admissible at trial."

*Id.* Likewise, Elliot-Stokes unambiguously and unequivocally invoked her right to have an attorney present while being question by police when she so "I need an attorney." Because it was the police officers interrogating Elliot-Stokes, not Elliot-Stokes herself, who reinitiated the conversation after that remark, Elliot-Stokes did not validly waive her right to counsel. As in *Minnick,* the custodial statement made by Elliot-Stokes were made after she specifically requested counsel and before either counsel was present or Elliot-Stokes initiated conversation again. Therefore, any custodial statements Elliot-Stokes is alleged to have made in response to officers' interrogations after invoking her right to counsel must be suppressed accordingly.

## IV.   Conclusion

Other than the fact that *Miranda* warnings were given, all factors weigh heavily in favor

of finding that Elliott-Stokes's statements were entirely connected to and a product of her illegal detention. Even if the statements themselves were voluntary, which Elliot-Stokes contests, they must be suppressed as "fruit of the poisonous tree." *Wong Sun v. United States*, 371 U.S. 471, 488 (1963).

Additionally, regardless of whether or not her statements were made voluntary, Elliot-Stokes invoked her right to counsel during questioning and law enforcement failed to honor these requests. Therefore, even if the statements were found to be unconnected to her illegal arrest, Elliot-Stokes's statements must be suppressed.

WHEREFORE the Defendant prays that this Court grant her motion to suppress statements, and exclude any evidence of her recorded statements from December 4, 2024, and for any and all just and proper relief to which she may be entitled.

Respectfully submitted,

LASSITER & CASSINELLI
1218 W 6th Street
Little Rock, Arkansas 72201
Office: (501) 370-9300
Fax:    (501) 370-9306
Email: Michael@LassCass.com

/s/ Michael Kiel Kaiser
MICHAEL KIEL KAISER (2015001)

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was delivered on December 3, 2025, to AUSA Kristin Bryant via eFiling and by electronic transmission.

/s/ Michael Kiel Kaiser
MICHAEL KIEL KAISER
